IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | | |
|---|---|---|
| DONSHUR L. OLIVER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.: 3:17cv00492 |
| | ) | |
| Virginia Board of Bar Examiners | ) | |
| 2201 W. Broad Street | ) | |
| Richmond, Virginia 23220 | ) | |

## COMPLAINT

COMES NOW your Plaintiff, Donshur L. Oliver ("Oliver" or "Plaintiff"), by counsel, and respectfully states the following for her Complaint against the defendant, the Virginia Board of Bar Examiners (VBBE):

## INTRODUCTION

1. Oliver graduated from the Michigan State University College of Law in May 2016. Oliver had previously attended Western Michigan Cooley Law School for 2 ½ years part-time. He was first identified as having a disability upon entry into law school and received accommodations throughout his time at law school including extended time based on a diagnosis of ADHD by Dr. John Braccio.

2. As Oliver was from Virginia and wished to return near his family and friends, he applied to take the July 2016 Virginia State Bar. Since he had received accommodations and still struggled with reading efficiently, he sought out an assessment by Dr. Thompson that would be recent for the bar application. Dr. Thompson diagnosed him with a Specific Reading Disorder and a Major Depressive Disorder.

1

3. Oliver then applied with the VBBE for accommodations for extended time, use of a reader, separate testing area and a private testing room for the July 2016 Virginia Bar Examination. Oliver based these requests due to his disabilities and specifically stated that he is unable to read at the same rate especially with longer and more complex material, he is easily distracted by noise or movement of others, and that these were recommended by his psychologist. He included testing from both of the professionals who had assessed him along with other extensive documentation.

4. The VBBE unlawfully denied those accommodations based on Oliver's disabilities and prevented him from fairly competing for and pursuing admission to the Virginia Bar under conditions that make the Examination accessible to his disability.

5. Oliver appealed the VBBE's decision denying him the appropriate accommodations. VBBE continued to deny the accommodations. Oliver is a person with a disability whose request for accommodations on the July 2016 Virginia Bar Exam was unlawfully denied which resulted in him suffering damages. As a result, Oliver failed the examination by 3 points.

6. Accordingly, Oliver brings this action against the VBBE to seek redress for its violation of Title II and Title III of the American with Disabilities Act ("ADAAA"), 42 U.S.C. Sect. 12101 *et. seq.* and Section 504 of the Rehabilitation Act ("Section 504"), 29 U.S.C. Section 794 *et. seq.* He seeks compensatory damages for the harm the Defendant has inflicted. He also seeks declaratory relief that will ensure that the Defendant properly understands its obligations with respect to future applicants for accommodations, injunctive relief to provide him with a passing score or ability to

bring his score up to passing by completing the examination, and attorneys' fees and costs.

## PARTIES

7.  The plaintiff, Oliver, is a natural person and citizen of the state of Michigan where he currently resides.  Oliver is a qualified individual with a disability and so was entitled to accommodations pursuant to the American with Disabilities Act ("ADAAA") and Section 504 of the Rehabilitation Act of 1973.

8.  The defendant, Virginia Board of Bar Examiners, is an agency of the Supreme Court of Virginia with its principal place of business in Richmond, Virginia.  It is responsible for the examination of applicants and otherwise ascertaining the qualifications of applicants for admission to the Bar of Virginia and licensing those applicants who meet the requirements as established by the Supreme Court of Virginia, the Virginia General Assembly, and the Rules and Regulations issued by the Board.  The Board administers the bar examination at locations throughout the Commonwealth of Virginia.

9.  Upon reasonable belief, the VBBE receives, either directly or indirectly,

10.  Federal funds for purposes of Section 504.

## JURISDICTION

11. Jurisdiction is proper in this Court under 28 U.S.C. § 1331 OR § 1343 because this action arises under federal law, specifically Title II of the ADA, 42 U.S.C. § 12132 *et. seq.* and its accompanying regulation 28 C.F.R Sect. 35.130; Title III of the ADA, 42 U.S.C. § 12182 *et. seq*. and its accompanying regulation 28 C.F.R. § 36; and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 and its accompanying

regulation 34 C.F.R. § 104.1.  Jurisdiction is also proper under diversity under 28 U.S.C. § 1332.

## VENUE

12. Venue is proper in this Court under 28 U.S.C. § 1331 OR 28 U.S.C. 1391b1-2 and c2 because the circumstances giving rise to this cause of action occurred within this District, and because Defendant regularly and systematically conducts affairs in this District.

## STATEMENT OF FACTS

13. Oliver is 39 years old and he currently resides in Michigan.

14. Most of Oliver's immediate family and friends reside in Virginia.

15. Oliver was born in Virginia and attended elementary school, middle school and part of high school in Newport News.  Teacher comments on his report cards throughout his education indicate he was "out of sort too much", "talked to much", "does slip back often and will need constant help and encouragement", "his inattentiveness is distracting his efforts", "could be an outstanding student if he concentrated on school and less on what's going on around him", "two missing assignments and makes up his mind to be consistent about reading and written homework", weaknesses "talking at appropriate times" , "using time and materials wisely", "following directions/paying attention", "completing classwork", "making appropriate effort".

16. His Comprehensive Tests of Basic Skills, 4th Edition, taken in 11th grade reflects his reading vocabulary in the 8th percentile and his total reading in the 25th percentile.

17. Despite these struggles academically, Oliver graduated from Norfolk State University.  During college Oliver had to schedule in extra reading time so that he

could accomplish.  To comprehend information, he had to study alone because he reads at a slower pace and comprehends at a slower pace.

18. In 2012, Oliver enrolled at Western Michigan University Cooley Law School where all incoming students are given the Nelson-Denny.  There was a six year disparity found between his timed and extended reading Comprehension identified by this test. Oliver scored in the 8th percentile on the timed portion and the 53rd percentile on the extended time portion.  Based on those results he sought out a psychological evaluation.

19. Dr. John H Braccio who has been a licensed psychologist since 1978 administered a battery of tests in October 2012 on Oliver including the Wechsler Adult Intelligence Scale-IV, Brown Attention Deficit Disorders Scales, Beck Anxiety Scale, and the Beck Depression Scale.  Oliver scored in the borderline range (8th percentile) on the processing speed and in the low average (12th percentile) in the perceptual reasoning portions.  Dr. Braccio found that "(p)rocessing visual material quickly is an ability that Donshur performs poorly compared to his verbal reasoning ability."  Dr. Braccio also found that the "weakness in simple visual scanning and tracking may leave him (Oliver) less time and mental energy for the complex task of understanding new material.  On October 18, 2012 based on all the tests and inventories, Dr. Braccio diagnosed Oliver with ADHD predominately inattentive type (Guarded) and an Adjustment Disorder with Mixed Anxiety and Depressed Mood.  Further, on October 18, 2012 Dr. Braccio recommended time and a half to double time accommodation on tests.

20. Western Michigan State Cooley Law School granted Oliver and accommodation of an extra 60 minutes per 3 credit exam in a testing room with a proctor in a room during his time there from September 2012 through December 2014.

21. Because of the large volume of reading Oliver took a reduced load over much of his time at Western Michigan State Cooley Law School so that he could keep up with the readings.

22. In July 2014, Mr Oliver went back to Dr. Braccio in preparation for the MPREs. Dr. Braccio did a follow up clinical evaluation and administered the Adult Manifest Anxiety Scale. He also reported findings from the Woodcock-Johnson-III Achievements tests. Dr. Braccio found that Oliver's sight reading is limited. Further he found that his fluency with writing is limited and his fluency with reading tasks is negligible. Finally his passage comprehension and quantitative reasoning are limited.

23. In January 2015, Oliver transferred to Michigan State University College of Law. While attending he received accommodations of 50% extra time on final exams, a 30 minute break for any exam that exceeds four (4) hours and a separate exam room or reduced distraction environment if separate exam room not available.

24. During his time at Michigan State University College of Law, Oliver attended full-time as he could select classes that required less reading and more class participation. He also selected classes that would allow him to only have up to 3 exams at the end of each semester.

25. In anticipation of his graduation and the need for accommodations on the bar examination, Oliver sought out updated testing which was done by Jennifer Thompson, Psyd who is a licensed clinical psychologist in Michigan.

26. On March 9, 2016, March 17, 2016, March 31, 2016, and April 7, 2016, Dr. Thompson administered a battery of tests including Wechsler Adult Intelligence Scale – 4th edition, Woodcock-Johnson Tests of Achievement – 4th edition, Conners Continuous Performance Test – 3rd edition, Conners Adult ADHD Rating Scales – Self Report, Minnesota Multiphasic Personality Inventory – 2.  She found there was "a significant difference between Donshur's Verbal Comprehension Index and his Perceptual Reasoning Index."  Within the Perceptual Reasoning Index his scores ranged from borderline to average and "Donshur appears to greatly struggle with tasks that require the use of three dimensions.  In addition, both subtests he struggled with involve timed components.  When limits were tested, Oliver was able to complete many more items correctly, but not within the allotted time."  She further noted "when completing the Applied Problems subtest, which involves reading story problems, Oliver took a substantial amount of time before answering the questions.  This subtest is not a times test and the score only reflect his correct answers, not the time it took him to get to them."  She diagnosed him with a Specific Reading Disorder due to his significant difficulty with reading words accurately and Major Depressive Disorder, Single Episode, Mild.  She did indicate that Oliver reported distress in the areas of Hyperactivity/Restlessness and Impulsivity/Emotional Lability on the CAARS.

27. Upon his conclusion at Michigan State University College of Law, it was Oliver's intent to return to Commonwealth of Virginia and he therefore applied to take the Virginia State Bar.  Oliver filled out the form in its entirety and attached all documentation requests and extra forms needed for his request for accommodations.

28. Oliver specifically requested additional testing time, use of a reader, separate testing area, and a private testing room.

29. These accommodations are routinely provided by Defendant and would not fundamentally alter the test.

30. Form C was filled out by Dr. Thompson on April 13, 2016 and submitted with Oliver's bar examination application.

31. Testing that had been done by Dr. Thompson (4/2016) and Dr. Braccio (10/12/2012 & 7/1/2014) were submitted with the bar examination application.

32. Proof of accommodations by both law schools was submitted with the bar examination application.

33. Academic Transcripts from Norfolk State University, Western Michigan University Cooley School of Law, and Michigan State University College of Law were submitted with the bar examination application.

34. Previous grade school records were submitted with the bar examination application.

35. Oliver submitted a personal statement explaining how his disability has impacted his choices regarding classes and the extra time to finish law school among other things with the bar examination application.

36. On June 9, 2016, The VBBE denied Oliver's requested accommodations by letter stating that the Board's expert reviewing Oliver's claimed disability found that the documentation does not support the request for testing modifications.

37. The conclusion found in the attached Expert reviewer's statement is that "Based on the information provided within this application (both from Dr. Braccio as well as Dr. Thompson) clinical documentation does not support a Specific Learning Disability or

Reading Disorder that would be considered at the level of a functional limitation under the ADA."

38. Oliver took 5 days off from studying for the bar to research and prepare an appeal and on June 23, 2016 appealed the decision of the VBBE regarding his accommodations request.

39. Oliver was highly distracted while studying for the Virginia bar and worried about his appeal which contributed to him being unable to sleep well.

40. On June 23 2016, Oliver wrote a lengthy appeal of the decision to the VBBE.

41. Oliver emphasized to the VBBE the considerable difficulty, effort and time he required to complete his schooling curriculums.

42. Oliver responded to each of the VBBE expert reviewer's criticisms in his appeal.

43. Oliver submitted a letter from Dr. Thompson outlining the diagnostic criteria for Specific Learning Disabilities and why Oliver fit those criteria.

44. Oliver increased his request for extension of time because he says he learned that there is more reading on the Virginia Bar Examination than he first understood.

45. On July 6, 2016, the VBBE continued to deny Oliver's requests for accommodations and based their denial on the reviews of their expert for Learning Disabilities-Specific Reading Disorder and the expert for Major Depressive Disorder.

46. The Expert Reviewer for the Major Depressive Disorder (MDD) concludes that there is "no evidence, either in the psychological test battery or in his treatment history, to suggest that he is substantially limited by a Mood Disorder."

47. The Expert Reviewer for MDD does not look at the range of scores on the processing index that he now says is fine and not indicative of an impairment.

48. The Expert Reviewer for MDD does not address the anxiety that is mentioned not only by Dr. Braccio but also Dr. Johnson other than to say that Oliver misinterprets the scores by Dr. Braccio.

49. The Expert Reviewer for MDD says that Oliver's failure to seek treatment suggests that his disability does not functionally impact him.

50. The Expert Reviewer for Specific Learning Disabilities (SLD) emphasizes that this reviewer is only looking for a Specific Learning Disability.

51. The Expert Reviewer for SLD focuses on the fact he was not identified before law school and that the low achievement score must be at least 1.5 standard deviations or below the 7th percentile.

52. The Expert Reviewer for SLD fails to include any of Dr. Braccio scores from the 2012 testing of the Woodcock-Johnson test reported in 2014 and incorrectly states that the only reading test done was the Nelson-Denny.

53. The Expert Reviewer of SLD fails to address Oliver's report of the difficulty, effort and time required to perform the function of learning and reading in determining the functional limitation.

54. There is no Expert Review assigned to review Oliver's application in light of the ADD diagnosis found in Dr. Braccio's report and school reports.

55. When Oliver received the news that the appeal had been denied, he suffered from heightened mental anguish, anxiety and emotional distress leading up to the bar.

56. Oliver had no choice at this point and took the Virginia State Bar with no accommodations on July 25 and July 26, 2016.

57. During the bar examination, Oliver felt there was no way he could finish the examination and in fact did not even get to some of the essay questions due to time constraints imposed without an extension of time.

58. While awaiting the bar results, Oliver felt heightened anxiety because he had failed to complete the examination given the time constraints imposed and concern that he would not be able to practice law in Virginia as he wished.

59. On October 20, 2016, he was notified that he did not pass the Virginia State Bar Exam.

60. His scores were: Essay/Multiple Choice Scaled Score 132.79

                          Multistate (MBE) Scaled Score     142.2

                          Combined Weighted Total      137

61. The passing Combined Weighted Total score is 140.  Oliver missed passing the Virginia bar by 3 points.

62. The Essay/Multiple Choice portion is weighted 60% and the Multistate portion is weighted 40%.

63. Oliver's anxiety increased upon learning that he had failed the bar and he has suffered embarrassment.

64. Oliver lost work opportunities in Virginia.

65. Oliver was forced to move back to Michigan where he was given accommodations on the February for the Michigan bar.

66. Oliver passed the Michigan bar with a score of 153.  The threshold to pass was a 135. His multistate score was 157 with the proper accommodations.

67. Oliver is now a working attorney in Michigan.

68. Oliver still wants to practice in Virginia as opposed to Michigan as Virginia is his home state.

69. Oliver cannot practice in Virginia without passing the Virginia State Bar at this time.

**CAUSES OF ACTION**

**COUNT I: VIOLATION OF THE AMERICAN WITH DISABILTIES ACT**
(42 U.S.C. §§ 12101 *et. seq.*)

70. Plaintiff Oliver realleges and incorporates reference paragraphs 1-67, as if fully set forth herein.

71. Oliver is an individual with a disability.  He has been diagnosed with ADHD predominately inattentive type (Guarded), an Adjustment Disorder with Mixed Anxiety and Depressed Mood, Specific Reading Disorder, and Major Depressive Disorder, Single Episode, Mild.  These impairments substantially limit his major life activities of learning, reading, concentrating and test-taking.

72.  Oliver is a qualified individual with a disability because she was eligible to take and did take the bar examination offered by the Defendant.

73. The VBBE is a public entity and state instrumentality subject to the non-discrimination requirements of Title II of the Americans with Disabilities Act.

74. Title II of the American with Disabilities Act states that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of services, programs, or activities of a public entity, or be subjected to discrimination of such entity." 42 U.S.C. § 12132.

75. The VBBE administers a professional licensing examination and is therefore also required to comply with Title III of the Americans with Disabilities Act.

76. Defendant Board members of the VBBE are charged with the obligation to ensure the Board does not discriminate based on the disability.

77. Defendant Board members of the VBBE set policies and procedures and criteria for non-standard testing and review appeals including Plaintiff's appeal of the VBBE's denial of her request for accommodations.

78. The statute and regulations prohibit discrimination on the basis of disability in professional licensing examinations.

79. Section 309 of Title III provides that:

> Any person that offers examinations of courses related to applications, licensing, certification, or credentialing for secondary or post-secondary education, professional or trade purposes shall offer such examinations or courses in a place and manner accessible to persons with disabilities or offer alternative accessible arrangements for such individuals."

*See* 42 U.S.C. § 12189.

80. The VBBE is the only entity that offer the Virginia bar examinations, passage of which is a prerequisite for the practice of law in the Commonwealth of Virginia.

81. As an entity that offer examinations related to professional licensing, certification, or credentialing, the Defendant are required to assure that the examination is administered so as to best ensure that the examination results for an individual with a disability accurately reflect the individual's aptitude, achievement level, or whatever other factor the examination purports to measure rather than reflecting the individual's disability.

82. Defendant's acts and guidelines in place (Defendant's Guidelines) during Oliver's application process discriminate against individuals with disabilities.

83. Defendant's Guidelines provide:

> In deciding the merits of petitions for accommodations by bar applicants, the Board relies upon the definition of disability contained in the Americans with Disabilities Act as amended by the ADA Amendments Act of 2008 (ADA/ADAAA), as interpreted by controlling case law.

84. Defendant's Guidelines state that "the determination of a disability by the board is an individualized inquiry and will be made on a case by case basis."

85. Defendant's Guidelines provide that applicants requesting additional testing time must submit documentation from physicians or other licensed professional that detail the basis for the requested additional time and the amount of time recommended.

86. Oliver provided Defendant with documents of his disabilities and the accommodations received in the past.  He included documentation from the law school of the accommodations for examinations and provided a detailed basis for his request for accommodations on the Virginia State Bar.

87. Defendant ignored this evidence and instead followed the recommendation of first an "expert in Specific Learning Disabilities" and then and "expert in Major Mood Disorders." These experts held Oliver to a higher standard as a person with a disability than the current law.

88. VBBE does not accord appropriate deference to the relevant Department of Justice regulations given the Department of Justice's unambiguous implementation of the ADA and the deference the Department should be afforded.

89. Pursuant to its authority, the Department of Justice has promulgated regulations to provide clarity regarding entities' obligations under the ADA, and a Technical Assistance Document titled ADA Requirements: Testing Accommodations.

90. "As the agency directed by Congress to issue implementing regulations, see 42 U.S.C. § 12186(b), to render technical assistance explaining the responsibilities of covered institutions, § 12206(c), and to enforce Title III in court, § 12118(b), the

Department's view are entitled to deference." Bragdon v. Abbott, 524 U.S. 624, 644 (1998).

91. The Department of Justice directs that a public entity shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modification would fundamentally alter the nature of the service, program or activity.

92. The Department of Justice indicates that testing entities are to defer to documentation provided by qualified professionals who have conducted individual assessments of the person seeking the accommodation. Additionally, the Department instructs testing entities to "generally accept" documentation from qualified professionals and provide the recommended accommodation without additional examination.

93. VBBE did not defer to the experts who had actually met with Oliver in person and assessed his disabilities. Instead, VBBE deferred to their outside expert(s) who failed to focus on any of the observations which are critical when reviewing an individual's assessment of a disability.

94. VBBE's guidelines state that an applicant demonstrate that the impairment limits a major life activity, and that the limitation is "substantial," meaning "considerable" or "specified to a large degree". The terms considerable or specified to a large degree are not found within the law or regulations.

95. The Department of Justice has made clear that the "threshold issue of whether an impairment 'substantially limits' a major life activity should not demand extensive analysis." 29 C.F.R. § 1630.2 (j)(4)(iii).

96. The Department of Justice further indicates "in making this assessment, the term 'substantially limits' shall be interpreted and applied to a require a degree of functional limitation that is lower than the standard for 'substantially limits' applied prior to the ADAAA." 29 C.F.R § 1630.2 (j)(4)(iv).

97. VBBE is charged with determining whether an individual's disability substantially limits the major life activity. Instead they have deferred to "expert reviewers" that are unnamed and provided them with inaccurate and illegal guidelines to do so.

98. VBBE discriminated against Oliver by failing to utilize the correct standards to assess his need for accommodations.

99. Further, the Department of Justice in facts mandates that the "testing entity must administer its exam so that it accurately reflects an individual's aptitude, achievement level, or the skill that the exam purports to measure, rather than the individual's impairment." 28 C.F.R. § 36.309. Further one must consider the "difficulty, effort, or time required to perform the major life activity" when analyzing whether the disability substantially limits the major life activity. 29 C.F.R. § 1630.2 (j)(4)(i) and (ii). Further "someone with a learning disability may achieve a high level of academic success, but may nevertheless be substantially limited in the major life activity of learning because of the additional time or effort he or she must spend to read, write, or learn compared to most people in the general population." 29 C.F.R. § 1630.2 (j)(4)(iii).

100. VBBE again deferred to their expert reviewers who failed to acknowledge the extensive information provided by Oliver regarding the difficulty, effort and time he expended to overcome his disabilities to read, study and take exams and instead focused on his achievement contrary to the law and regulations.

101.    Instead of providing guidance to it's expert reviewers, the VBBE states the effects of corrective and mitigating measures – both positive and negative – will be considered when determining whether a bar applicant is "substantially limited" in a major life activity, and therefore disabled. This standard is wrong as positive corrective and mitigating measures has not been an acceptable interpretation of the ADA since the ADA Amendments Act was passed and is a direct contradiction of 42 U.S.C. § 12102 (4)(E)(i).

102.    By utilizing outdated standards and applying the wrong review standards, the VBBE unlawfully denied Oliver the appropriate accommodations for his taking the Virginia Bar Examination and discriminated against him.

103.    By unlawfully denying Oliver the accommodations, the VBBE denied him the ability to obtain the same result, gain the same benefit, and to reach the same level of achievement as that provided to others and discriminated against him.

104.    Defendant has failed to best ensure that Oliver's performance on the bar examination was representative of his abilities rather than his disabilities.

105.    Oliver was unable to obtain employment as an attorney in Virginia as a result of Defendant's discrimination and must now disclose that to any future employer and explain her failure despite such failure being the direct result of Defendant's denial of her rights.

106.    Oliver has had to move out of the Commonwealth of Virginia and take another bar in the state of Michigan which accommodated his disability.

107.    Oliver has suffered extreme anxiety, sleeplessness and obsessive concerns due to the discriminatory acts of the Defendant.

108.    Declaratory and injunctive relief is necessary for Oliver to pursue his desire to practice law in the Commonwealth of Virginia.

109.    Compensatory relief is needed for Oliver.

**COUNT II – Violation of Section 504 of the Rehabilitation Act**
(29 U.S.C. § 794 *et. seq.*)

110.    Plaintiff Oliver realleges and incorporates by reference paragraphs 1-107, as if
fully set forth herein.

111.    Oliver is an individual with a disability.  He has been diagnosed with ADHD
predominately inattentive type (Guarded), an Adjustment Disorder with Mixed
Anxiety and Depressed Mood, Specific Reading Disorder, and Major Depressive
Disorder, Single Episode, Mild.  These impairments substantially limit his major life
activities of learning, reading, concentrating and test-taking.

112.    Upon reasonable belief, the VBBE is either a direct or indirect recipient of federal
funds on its own or through entities who work directly with it.

113.    VBBE's activities thus are subject to the anti-discrimination requirements of
Section 504 of the Rehabilitation Act.

114.    Defendant's acts, policies, practices and guidelines in place at the time of Oliver's
application discriminate against individuals with disabilities, including Oliver, who
requires testing accommodations.  Because of his disability, Oliver was deprived of
an equal opportunity to access the bar examination.

115.    Defendant discriminated against Oliver solely on basis of his disability.

116.    Defendant failure to reconsider their decision despite their failure being brought
to their attention upon appeal is discriminatory and hinders Oliver's ability to practice
law in the Commonwealth of Virginia.

## RELIEF REQUESTED

WHEREFORE, Plaintiff, requests that this Court:

1.   Declare that the Defendant, namely, the Virginia Board of Bar Examiners, violated Plaintiff's rights under the ADA and 504 of the Rehabilitation Act by not providing Plaintiff necessary accommodations.

2.   Declare that the Defendant's standards in place at the time of Plaintiff's application are in violation of the American with Disabilities Act.

3.   Order the Defendant to grant Plaintiff a passing score on the Virginia State Bar.

4.   Award Plaintiff money damages for all pecuniary losses, including but not limited to, bar fees and bar review courses.

5.   Award Plaintiff money damages for Defendant's violation of Plaintiff's federal civil rights, mental and emotional distress and other compensable damages in the amount of One Hundred Thousand Dollars ($100,000.00), or in such greater amounts to be determined at trial.

6.   Enjoin Defendant from maintaining and reporting records of Plaintiff's test results if he is not granted a passing score.

7.   Award Plaintiff reasonable attorney's fees and costs;

8.   Award Plaintiff any and all expert fees; and

9.   Award Plaintiff any and all other and further relief the Court deems just and appropriate, including leave to amend the facts, add parties and claims, and amend damages sought as further evidence is obtained through discovery in this matter.

PLAINTIFF REQUESTS TRIAL BY JUDGE ON ALL ISSUES IN THIS MATTER.

Respectfully submitted,

DONSHUR OLIVER,
Plaintiff

By: _____
Counsel

James B. Thorsen
VSB No. 18113
Mary K. Hart
VSB No. 37465
THORSEN HART & ALLEN, LLP
5413 Patterson Avenue, Suite 201
P. O. Box 17094
Richmond, VA  23226
Telephone: (804) 447-7234
Facsimile: (804) 447-7813
E-mail: jthorsen@thalawfirm.com
E-mail: mhart@thalawfirm.com
Attorneys for Donshur Oliver